All rise. This court is now in session. You may be seated. I'm not accustomed to being in the middle here, so I'm just about out of time. You may call the case. Case number 3-16-0713. Chicago Title Land Trust Company et al. Appellant by Michael J. Martin v. Village of Bolingbrook. Appellee by Kenneth Flory. Mr. Martin. May it please the Court and Counsel, my name is Michael Martin. I'm here on behalf of the property owner, which is two different land trusts, and they're both controlled by an individual named Ed James, who is a familiar person, car dealer from Bolingbrook, one of the Chevrolet dealership facilities. Oh, not familiar to me, so thank you for sharing. I think these cases, because this is an appeal of what basically was treated as cross motions for summary judgment on a collateral involving an annexation, the best way to always start them is to look at the map. I attached a map to the complaint. It's in Exhibit A3, and it basically outlined the parcels that were involuntarily annexed. So we were annexed pursuant to 713, and that was on May 10th of 2016. Prior to that, the Village of Bolingbrook annexed a Commonwealth Edison utility right-of-way for the high-tension lines, and they annexed a part of it. So if I look at your map, what does the comment parcel look like? The comment parcel would be the one that is in red. And how many acres? It's 210 feet wide by approximately 1,100 feet long, and if you look at it, it runs from And there's a legal description? There's a legal description, and it contains about 5.3 acres. So the entire 5.3 acres was annexed? Yes, yes. And that was done on March 8th, 2016, and then the involuntary annexation occurred on May 10th, 2016. And my client owns the two parcels which are next to the ComEd utility right-of-way, which are labeled 1 and 2. 2 is an old farmhouse. I mean, 1 is an old farmhouse, and 2 is a parcel which my client had zoned in 1979 for industrial under the Will County Zoning Ordinance, and he was using it for outdoor storage. There's another utility right-of-way, which is a gas pipeline, that's parcels 3, 4, and 6, and then there was an annexation of 10 acres that's labeled as parcel 5. So if this map that you're showing, because it was very hard to read, quite frankly, you're talking about this property that's bounded by the yellow line? The yellow line is the 713 annexation. The red line is the ComEd annexation, the red box. Okay, so all of this property was in here, is that correct? Yes, sir. Okay, all of that, and then ComEd is this little property in here. The red one, yes. So you really have only a linear footage closing off to make four sides on the, what you would probably call that, is that the west side of the property? It would be the east side. The east side, okay. So how long is that linear footage? That linear footage is approximately 1,100 feet long as to what they annexed to get the whole 5 acres. The bottom portion is somewhere in the area of 400 feet long. It's on the annexation plan, which also I believe is a record. Yeah, well, basically to close that off, to fence it into a square, or not square, but to close it off, about 1,100 feet of common boundary with an annexed property of Commonwealth. Right, and that is the third lane to make us wholly bounded because the I-55 right-of-way is not counted. So we're bounded. That is what we're challenging as a conveyance that is invalid, the annexation prior to our annexation. And that is what really basically was devastating or had a devastating effect on my client because if you look at all of these parcels in this, you'll see that this basically is a commercial warehouse area with some of the property in Bolingbroke, some of the property in Romeoville. And my client, as a result of this annexation, went from I-2 zoning since 1979 in the county to a state residential in the middle of all of this. It was originally A-1, though. In 1979 it was A-1. That's right. Yeah, that's correct. But it went from, you know, in 1979 it's been I-2 ever since. And we've been using it for outdoor storage. And, you know, a little bit on the zoning case that this all kind of arose out of is that's been going on since 2013 on a complaint by the village of Bolingbroke. And that has wound its way through an administrative hearing that my client did pro se through an ordinance violation. And then, you know, I more or less took over and tried to get the zoning in line with what the county wanted. And we came forward and said we'd put a pole barn on parcel number 2. And the county said, well, you need a variance. And the variance was for frontage because the frontage of parcel 2 on the frontage road is only 60 feet. And they said you need 80 feet of frontage in order to build your pole barn. And it's only been 60 feet in all of its existence. So we had filed in the zoning case, which Bolingbroke was intervened in and was a defendant, a motion for summary judgment that said, no, the county's ordinance is interpreting its ordinance incorrectly because the 80 feet is measured from the building setback line. And when we measure it from the building setback line, we have sufficient frontage. So that was the background when we got hit with the involuntary annexation. And that was then to remove it from the court's jurisdiction and to force it. I think you have a misunderstanding of the facts. So help me out here. The parcel of ComEd that was included in the annexation ordinance, is that the entire planted property owned by ComEd? Absolutely not. The utility right of way is Miles Law. And that's one of the points is what they did is they carved out this parcel. And it's clear because Bolingbroke initiated the annexation. And when you look at the rest of what I've argued, there's no other purpose for this carving out except to wholly bound us and force us in. Is that a disagreed upon fact? Or does it make any difference? The agreed upon fact is that if the Commonwealth Edison and conceded by Bolingbroke in its brief, is that if Commonwealth Edison annexation is invalid, then we're not wholly bounded and our annexation involuntary is invalid. If it's invalid. Right. Right. If Commonwealth is invalid. Yes. Right. Because you didn't close it. Because it's not a closed bond. It's not wholly bounded. Wholly bound. I'm sorry. Yeah. Usually we use the word contiguous, but because it's a force it's not wholly bounded. It's the same as contiguous. As far as it's bounded by Romeo Bill, right? That's true, but we wouldn't be bounded. They have to have the comment. Right. Because it's got to be bounded by municipal. Right. Right. Whatever municipal. I'm confused as to how they can carve out and declare by ordinance what part is going to be carved out to create the basis for the involuntary annexation. I'm relying on the petition of Will versus Kildare, which is 124 Illinois 2nd 533, and I think that case stands for the proposition that the locations and the boundaries of the track which the municipality seeks to annex, and I'm talking about the ComEd property, must be determined by a source independent of the annexation ordinance. That's not the case here. That's exactly. There's nothing supporting the carving out. There's no rationale beyond. Other than the agreement. Right. That's exactly. Okay, we're not going to tax you. We're going to excuse you from certain obligations that come with annexation. Just go along with us. Right. Right. Is there any default on planning? Well, the fact scenarios of all of these parcels where there's carving out are all different because they're different schemes and plans. This is the first that I can find where they actually annex the adjoining parcel under this kind of ordinance where, quite frankly, what extends? How did the village extend? I mean, none of its ordinances apply. Life safety, health, planning, subdivision, zoning, it has no jurisdiction, and it can't interfere with the operations of ComEd at all. Nothing from the village extends, and it doesn't tax. What does the taxpayer get out of this? There's no taxes for the village. It gave up its right of domain. Pardon me? Someone might call it a sham. That's what I've called it is a sham because that's what the case law says. I mean, the village of Lyons, the Kildare, all those, City of Joliet, they're all sham annexations. So when you look at that ordinance, it's a sham annexation. It's a voluntary annexation, though, isn't it? It is under 718. It's voluntary. But, you know, you have to ask yourself, is that a natural and gradual extension of the village boundaries to areas that adjoin one another in a reasonably substantial physical sense? If ComEd could back out right away following that, are we setting a precedent that we're going to allow because they can DMX at any time, and we're going to waive all the requirements of DMXation for them? We're also going to say, oh, that's not on the border anymore, which is the policy. They say they're going to do it under 5734. That's not on the border anymore, so we're going to ignore that. We're going to make a finding if you want to DMX. And they also say we're going to make a finding that it doesn't solely isolate any other part of the village because you're a public utility right-of-way under 5711. And those are the two findings that they make, and they're agreed. And the problem with that is under 5711, public utility right-of-ways can be no more than 30 feet wide. So what they've agreed to do is to, you know, which they can't do because even home rule communities cannot change the statewide policy behind DMXation. What they've agreed to do are make two findings which are false. That's what they've agreed to do. I, you know, when you. . . Which ended up in a dismissal of the zoning case involving the county. Pardon me, I didn't hear that. Did that end up in a dismissal of the zoning case involving the county? No. No, right now the county zoning case is pending the ruling from this court. Okay, repeat very clearly those two things that you say are what? Under 5734, you have to make a finding that the property that you're DMXing is on the border. Well, it's not on the border. After it's DMXed, it's not on the border. Simple as that. So what they're doing, and you know, the other requirements. . . And the property you're speaking of is coming. Yes, that's right. And under 5736, it has to be 20 acres. It's not 20 acres. You know, what they've agreed to do is to you. . . I don't know what they did. Their home rule of powers don't give them the authority to do it. But what they've agreed to do is allow you. . . Even though you have a 75-year term annexation agreement which says that under the law that that's supposed to be the term that you're supposed to stay in the village, we've allowed you after six months or a year to DMX. And the second point is when you read their Section 10 of their annexation agreement, they agree that we will make a finding that if we DMX, that other property will not be isolated because under 5711, you can have a public utility right-of-way under that policy that does not consider to isolate other property in the village, and you can skip over it. You know, if you were to just skip over it. Well, you know, if that was the case, then they didn't have to hold me boundless. They could have skipped over it. But that right-of-way is specifically stated in 5711. It can be no more than 30 feet. We're 210. Two minutes, please. You're 210 in width. Yeah, in width. Is there something significant about that? No, it's nice in the face of the statute. How can you agree that an apple is an orange? It has to be 30 feet under the statute. I'm not clear on those two points, so if I could have it one more time. Okay. Because that seems to be the essence of this case, doesn't it? Yes, that and everything else, basically, that's in the reannexation agreement, which is incorporated into the ordinance, and all the other things that I mentioned. But, yes, they've agreed that if ComEd wants to reannex under 5734, we're going to say, well, that property's on the border, because 5734 says it's on the border, okay? And that they say in their agreement, I believe it's the second paragraph of page 8 of their agreement, we're going to say that it's not going to isolate any other part of the village, which is another finding that they make when they reannex, because you can treat this as a public utility right away under 5711. You can't treat them as a public utility right away under 5711, because they have to be 30 feet wide, not 210 feet. Simple as that. Okay. For all the reasons that are in their annexation agreement, which is incorporated into the ordinance and is part of the ordinance and incorporated in the petition and was part of the public hearing, there was findings of fact, what they've done is they've overreached. This property is the ComEd property, which was used to hold and bound us and force an exiles, is in the village how? Name only. There's no jurisdiction by the village over the property. There's no taxes. There's no negative consequences to ComEd. There's no positive benefits to the taxpayers. Yes, ma'am. Or people attending schools. I couldn't have said it better. But if it's annexed, there would be those benefits flowing from your clients, right? Pardon me? If it's annexed, wouldn't those benefits be flowing to Bolingbroke? If my client is forced to annex? Yes. Would those benefits be? That's an involuntary annexation. Right. If they're brought into Bolingbroke, then that property is subject to that, all of those things, isn't it? Well, yes, it would be. It would be subject to all of those. But does that, you know, I mean. So there is a benefit to Bolingbroke to annex, isn't there? Are we going to allow a property to come in temporarily and then back out in order to force annex other properties? What kind of precedent does that set? Has Bolingbroke waived the zoning requirements as well? It's unzoned. They've made it unzoned. So if the same deal was extended to your client, we'd have a whole different situation, where if your client was given no negative tax consequences, no required zoning restrictions, maybe not such a bad deal to agree to a voluntary annexation of your client's property, but there wasn't a mutual offer. No. Such a generous deal. It's a deal that I've never seen in 40 years of doing annexation work. I mean, I'm a lawyer on Inway Plainfield annexation. I have done easily 50, 60 annexations, maybe more. So is your point that the annexation agreement is void, unenforceable, or is the ordinance void, unenforceable? Help me understand. Under 5714, you can declare it void. Under 57148, you can order them to de-annex us and report a pledge. So you can declare it void. You can declare the ordinance void. You can dismiss the ordinance, I think, is the rule. Because the annexation agreement is unenforceable. It's a sham. Because the village is agreeing to de-annex ComEd on a basis that is not authorized. Yes, ma'am. Yes. Because the right-of-way is more than 30 feet long. Right. That's one of the things, yes. So I understand that. That's correct. Okay. So, you've got a lot of policy going on here, but as a matter of law, is there an error? Or does the policy override that? Well, I think all of those cases, the Lyons cases, the Kildare, the City of Joliet, says you have to look at the preceding conveyance as to what was done. And if that's a sham, if it's only annexing A to get to B, this is only annexing ComEd A to get to B, to force annex us. That's all this is. If you look at it that, that's the error of law. And the public policy behind the annexation statute does not allow that. Okay. All right. Thank you very much. You're welcome. Mr. Flory? Is there a why to all of this? Excuse me? Is there a why? I spent a lot of time reading this. Why? Yes. During the argument, I'll definitely address your question, Judge. May it please the Court, Counsel, good morning. My name is Ken Flory. I'm the attorney on behalf of the Village of Bolingbrook. And, Judge, I will get to your question if I can. I will try not to interrupt. No, please do. Your questions are my utmost concern. All right. Thank you. Okay. Okay. Background on, you've heard a little bit, you've heard a lot that, honestly, it's not, this is the first time we've heard a lot of what's kind of coming out of his mouth. It's not in the brief and it wasn't raised in the trial court. But we'll get to that. Last time we referred Judge Rickman's decision, Judge Rickman was the presiding judge for the Covalanto proceeding. And, as you heard, there were cross motions for summary judgment based on, was the involuntary annexation ordinance valid. And, as you heard, this counsel is asking you to go three layers deep to get to the result that he wants. He's asking you to look at the annexation ordinance involving his client's property and other parcels. So that's important to know in the scheme of is this the village's, the why. This is a natural annexation of boundaries. You have one way to go to the south, one way to the north. This is a natural growth up to that boundary. Any time you have unincorporated properties throughout our state, it's just a matter of time, particularly in the Chicagoland area where the municipalities near those unincorporated areas are annexing those properties. Some of them are done parcel by parcel. Did it have nothing to do with the pending zoning issues? Your Honor, in all due respect, none of the case law asked this court to look through several layers deep as counsels to the intent of the parties, the legislative wisdom. You may disagree with, did the village make a wise decision in all the conditions of the convent annexation agreement? We can look at that and ask the question, but all of the court decisions say that's a legislative action, that's a legislative decision by the Village of Bolingbroke Board, and we may agree or disagree, but it's not the court's role to second-guess that and go behind that intent. So we have to determine whether or not it actually complies with the statute and whether or not it is a completed annexation under the statute, which is the precursor of the requirement for the forced annexation for the Holy Bound. I mean, that's really the argument. You're saying, hey, our annexation of this convent property was complete because we did it on March 8th, and so we had the right then to complete this forced annexation, and their argument is just because you did the paperwork doesn't make it a true annexation because it is void because it didn't follow the statutory criteria in order to make it, regardless of whether they waived taxes or did other things when they gave them, I think, probably the authorization to disconnect whenever they wanted to without any notification or anything else. They're saying that's not a true annexation, and then we use the case law, and your argument is, I mean, under, I think, the Village of Plainfield case and the City of Joliet case, it seems that their argument is pretty valuable. So what is it that you point to that says that regardless of what any of these terms are, it satisfies those statutory requirements? Okay, let's start with the convent annexation. by agreement to the village and the property owners through an annexation agreement. Every step that was taken in the convent annexation procedurally and substantively was in complete compliance with the statute on voluntary annexations. No dispute. We gave proper notice. We held the proper hearings. The proper legislative actions took place at the village board level, period. There's a completely legal, no flaws in that process, and counsel can't point to any flaws. It was flawless. He wants you to look beyond the ordinance to get into the legislative policymaking of what were the contents of the annexation agreement. That's what he needs you to do. He needs you to play village board, step in the role of the village board, and determine that the terms you agreed to in the annexation agreement that led to the voluntary annexation of Con Ed, there was something wrong with those and you shouldn't do that. That's legislative. That's legislative. That's what I was talking about, policy. That's what legislators do. Absolutely, Judge. The courts are not policymakers for the legislative bodies. Not the steps, not the procedural steps that were taken, because I don't think there's any question that whether you gave the proper notice, whether the timing went to the correct body, and then the right number of days passed, it was done exactly right. But whether or not the content of the annexation agreement, whether or not what was included in the agreement satisfied the statutory requirement. Of course, they have legislative authority. They can say, we don't want any of it. We're going to annex all this property. We don't care if you ever pay taxes. That is a legislative function. But then there are some things that even in their function that they are required to follow. And you're saying so that it doesn't matter that they can enter into a voluntary agreement that then at the end lets the connected property out at any time and that that satisfies both the underlying statute and the requirement for holy bondage. You're saying that there is nothing in this process that would ever be considered to be improper, and even if you look at it in terms of what these Supreme Court cases say about not being able to just bring in a piece of property, even if it is wholly voluntary in order to get to somebody else. Okay. First of all, the key language in the annexation agreement with ComEd is every step, if they do decide to de-annex, if they haven't, if there's no pending de-annexation process, it all must be in compliance with Illinois law. That's critical language. If we're going to get to the legislature, if you want to step in the legislator's shoes, and you are sort of going to look beyond the current annexation, go to the second layer, which is the ComEd annexation ordinance, and then go to the third layer, which is the agreement itself, the agreement has language in it that any de-annexation must be in compliance with Illinois law. Period. There's no end around this. You heard the fantasy from counsel fiction. He's creating, he's stating facts that aren't on the record and that aren't consistent with the terms of the annexation agreement. But let's talk about how that works. So there isn't a six-month safety catch or ejection button in the original agreement? The original agreement allows for ComEd to pursue de-annexation at some point, at any point it desires. Is there a six-month window, or is it the day after? They can pursue de-annexation from not through the terms of the annexation agreement. Every property owner, if you're a property that qualifies, can pursue de-annexation. So they really were restating the law. If ComEd changes its mind, decides to leave, then you can follow the de-annexation process and the villagers are going to fight you. That doesn't mean if another objector steps up, it's a different story. We're talking about... You said there's a couple of misstated facts, and I just wanted to understand what those facts were that were misstated. He misstated that we've given illegal authority to ComEd to de-annex. That's the critical misstatement that he said. The agreement to the contrary, if we're going to get to the agreement, it requires any type of future proceedings to be in compliance with Illinois law. So you would have to create... To follow counsel's reasoning, you would have to hypothetically jump forward and come up with some theoretical de-annexation petition by ComEd, and then let's determine if that complies with the law. We don't know how much of the property is going to seek to de-annex. It requires guessing in the future, and I'm not familiar with any court playing that guessing game to determine the validity of an ordinance. The property that was annexed for ComEd, is that separately platted as one continuous parcel? Correct. It was platted for de-annexation. There was not a platted subdivision file, which is not required. There was a platted annexation that was filed with the ComEd annexation. Which property to be annexed has to be platted, right? It was platted. I said it has to be. Correct, and it was platted. ComEd has a right-of-way or owns a much larger piece? Well, it goes through Romeoville. We're not going to include in our annexation plat Romeoville property. That's not an issue. We don't know. Perhaps ComEd and Romeoville will have similar discussions if we're going to play the guessing game and decide to annex. That kind of property goes throughout the state. Every municipality may decide if we want to annex ComEd's right-of-way or not. That's up to them. It's other villages. It really has no relevance to the issues before this court. Is it relevant to the public policy argument? Public policy. The public policy argument that he thinks that we were picking on him, that we were bothered by his property, is just false. The public policy is this is a natural growth of the village boundaries to encompass unincorporated areas. Why did you intervene in the zoning case, then? Because the property was a dump. The county was going after the property owner for, I'm not going to add facts like council. So what you say you're picking, he thinks you're picking on him while you did ask to intervene in a proceeding that you didn't actually have jurisdiction over. You do have, if you're adversely affected under the zoning statute, even for the unincorporated property, you have a right to intervene. And the village represents the interest of every single resident. The businesses next to this property were burned, and there was recently a fire on that property, and half the building burned down. It's still being occupied. It effectively wants to be treated like a no-man's land down there. But again, we're getting beyond. You just gave me the why. Okay. Vol Valley is the perfect case to talk about, Judge. You asked about if there's, assuming there's some irregularity in the annexation agreement. There's no irregularity. There's nothing illegal in the contents of the annexation agreement. Vol Valley says, and remember, Vol Valley had a similar, any time you have an involuntary annexation proceeding, it always makes someone upset, and people, emotions are high. People don't like the government coming in and doing something against their wishes, but the statute allows that. The General Assembly, in their wisdom, has allowed this process. Vol Valley, there was a voluntary annexation, and the allegations were, as part of the pre-annexation, the village and some of the property owners entered into some agreements. One of these was to allow alpacas to be farmed on the property. The annexation occurred. There was some reneging on the terms of the annexation agreement lawsuit. This becomes part of the lawsuit. The Vol Valley Second District Health Court said, that's making sausage. Whatever occurs in the annexation agreement, that's a right to contract. We're not going to interfere with the rights of two parties to enter into a contract, whether it's a good contract term, bad contract terms, enforceable, unenforceable, that's not relevant to the annexation proceedings. That's the firm holding in Vol Valley, the Second District. There was no other case on this issue about no reported decision, appellate. You're talking about the voluntary annexation agreement, correct? Correct. Okay. Okay, that's like step A in this process. That's what you did with Congress. Correct. And Vol Valley says that's between parties. Whatever goes, can go. Correct. That's between parties, whether the terms are smart, not smart, enforceable, unenforceable. The courts aren't going to get involved. Let's go to the next step. Next step. There's an annexation agreement that Vol Valley tells this court not to get involved in. The next level is the ordinance to voluntarily annex the property. ComEd files a petition. We want to become part of your village. They file a petition. We give the proper notices. We follow every statutory required step for the ComEd annexation. No objection by parties. No objection by this current property owner. The annexation of ComEd occurs. Step two, or step three, because we had an annexation agreement in February of 2016. The village approved in March the next month the ComEd annexation. Then in May, they approved the involuntary annexation, which is step three, for the current property. And in all those annexation proceedings, all the steps were satisfied as required by the statute. There's no dispute about that. The only way to accomplish what counsel wants you to do is to, first of all, look at the legislative function, step into the legislative function of the village of Bowling Brook. Counsel wants you to enter into the second-guessed decision by the village to enter into the annexation agreement with ComEd. Then he wants you to second-guess the decision to negotiate what terms are negotiated between ComEd and the village. Again, the language in that agreement provides everything. Any step must be in compliance with Illinois law. So ComEd is not going to pull out without complying with Illinois law. Then next, counsel wants you to get into the legislative decision-making of the voluntary annexation of ComEd, whether that should have been done or should not have been done. And then they want you to get into the legislative decision-making about the voluntary annexation of 18 acres, three of which included the appellant's property. There's no case law that directs you or authorizes any court to get into that legislative decision-making. Public policy and legislative decision-making are pretty much in the same boat. If there is no illegal step in this entire process, I think Judge Rickman struggled with this also. If you follow the statutory process, whether you like involuntary annexation or dislike it, that's not the role Judge Rickman didn't view as the role of the court to second-guess those legislative decisions, those policy decisions, even if you had some personal disagreement with that. You follow the proper steps. Bull Valley directs... But doesn't Bull Valley, I mean, that would speak more to ComEd saying, hey, we want out, and the village saying no, because you have to follow Illinois law. It doesn't matter that our annexation agreement, I mean, because Bull Valley is not a disinterested, not the third party, but it was the parties to the voluntary annexation agreement at some point became unhappy with what happened after that and said, this isn't what our annexation agreement said, this isn't what we agreed to. And the second district said, yeah, just because this is what your annexation agreement, you guys have a contract dispute about that apparently or something like that, that doesn't make your annexation invalid. And wouldn't that really, I mean, what you're arguing about Bull Valley applying to the appellant, really it would be more applicable to ComEd if they wanted to come out and somebody at the village said, no, you can't. And they would say, well, our agreement says we can't, and you would say, well, the law doesn't allow it. No, Bull Valley was a collateral attack by another party that didn't want Bull Valley annexation to occur. It wasn't that the argument was that it was an illegal pre-annexation term, and the court said, we're not getting involved in that, we're not getting involved in whatever the context of the annexation agreement, whether legal or illegal. The court actually said, if the annexation agreement was legally invalid, it doesn't affect the proceedings of otherwise legal annexation. So what you're really trying to say is Bull Valley goes to ComEd and Bolingbroke. Yes. The real dispute before us today, as I understand it, is whether or not the involuntary annexation is a sham or not. That seems to be what's been discussed here by opposing counsel, and we do have case law that invalidates involuntary annexation, which would come to be shams. Am I correct? Shams, and the cases that talk about shams are if attorneys were taking steps contrary to the ordinance, that the statutory requirements for involuntary annexation did not occur, whether you split up the limitation on land ability into three separate cases. It's a lot of trickery. All of the cases that voided an involuntary annexation involve expressly illegal steps by the village, none of which has occurred here and none of which is alleged here. All of his allegations go to the policy-making decision of legislative body. Not an illegal error, not at all. All the steps were followed appropriately for the involuntary annexation to the T. All the steps for the voluntary annexation were followed to the T. He needs you to go then to the annexation agreement, the third layer he wants you to dig down into, and now decide whether the terms of that annexation agreement should or should not be there. The annexation agreement is controlled by Full Valley. Which, of course, is really not the purview of the trial court to look at. Without looking at the annexation agreement, this case is perfectly legal from start to finish. And even if you look into the annexation agreement, it's still perfectly legal from start to finish. So your position is whether the purpose of the bowling group board was to take a different avenue to enforce some type of zoning or something they didn't like on that property. That's irrelevant. Correct. The intentions, making sauces. What the intentions are, what the subjective beliefs or views are, just like any individual village board member who votes to approve, those subjective beliefs are not for any court to get involved in. Thank you for your time. Thank you. Thank you. Thank you very much. The legislative purpose and the annexation agreement, that divorcing does not occur in this case. We aren't going three layers deep. We are going to the ordinance itself, which includes the annexation agreement. The ordinance annexing ComEd property incorporated the annexation agreement, and the petition to annex incorporated the annexation agreement. It's set forth as part of the ordinance as if any other term of the ordinance is set forth. And they can't ignore that. If they didn't do that in this case, that wouldn't be the argument. And the Bull Valley case, I don't find that as this black letter law ruling us out. Where has Bull Valley been cited since Bull Valley has been passed? That's not a black letter law case. That case, by the way, Bull Valley says, We're not going to consider this oral annexation agreement to continue commercial alpaca farming on the property in a 712 annexation case. Because the objectors were given full opportunity to raise any objections under 5713 regarding contiguity, etc. And 5714, which states, and if you look at Section 4, or otherwise invalid. And that's where we come in, that the ordinance is otherwise invalid. And all those cases that are there, the two village alliance cases, sitting with Joliet, all of those say when the court looks, and the court should look at that ordinance, should look at what happened, just as if it's a convenience. Because it wholly bounds us. It makes us contiguous. And the court should look at that. And when you look at that, there's no way this ordinance, which does all of these things, can beset theological and gradual extension of the village boundaries. And all of these other things that are off record, like what comments, you know, a prudent utility, and the comments made today about burning and firing. They're not off record. And I can tell you if they were, we'd be having a dispute. But, you know, I mean, that's the case. This is the most invalid annexation ordinance I've ever seen. If they didn't put the annexation agreement into the ordinance, they might have a different argument. But they put it in. And when you look at it, I'm so glad they did. Because when you look at it, can you tell me that this is anything else but a scheme to annex A, in this case to force annex B, us? That's all it is. May I ask for clarification? Okay. The annexation agreement that is incorporated into the ordinance. Yes, ma'am. I don't want to mischaracterize it, but it says that comment can de-annex so long as the law allows. But doesn't it also say we'll look the other way? We agree you can. That's exactly what it says. Okay. I don't want to be unfair, but I sometimes, I just don't want to be unfair. Is that consistent with your interpretation? Well, I'd have to say right now. You can de-annex as long as it's within the boundaries of the law. But we're the only other party to this agreement. And there's no other consequences to annexation. So nobody else is going to complain about the lost money, the lost access. So we'll look the other way and agree. Does the annexation agreement go that far, that the village will not object? Yes. It says it will have no objection. It agrees. It agrees to have no objection. Is that invalid? Pardon me? Is that invalid? Is that invalid? That's your point, isn't it? Well, I think it is invalid because the village, even under its home rule parties, cannot change the de-annexation statute. It can't expand on it. It can't legislate on it. Are they compelled to object to a de-annexation? Pardon? Are they compelled by statute to object to a de-annexation? No, they're not compelled to object. But could they make agreements that are not factually correct in order to achieve that? I don't think so. It's a public policy consideration, and I understand your argument better now. And it happens often when a tribe judge is sitting on the bench, and the parties walk in and hand an agreement to the court. The court says, this isn't authorized. This is not supported by statute. It's contrary to law. And the argument from the other side of the bench basically is, but we agree. But we agree. Look the other way, Judge. Isn't that what they're asking us to do here? I think so. And the problem with that is their agreement is to first annex us. We have to look the other way. We only look at the annexation of your client's property, not the client's property. No, and I disagree with that. I agree that you should look at the conveyance before. And that's what all those cases say. One minute, counsel. Any other questions? I have a question. Again, because the only thing we have, if we don't have the record, is the aerial map. All this property that's on yellow goes with boundaries of your client's property. Am I correct? No, my client is what's labeled 1 and 2. We'll write it up against the ComEd. This is very unclear. So you're saying this is a 1 and this is a 2? Yes, sir. Okay, so you're saying to close off your property, we're only talking the linear boundary here, right? The ComEd, yes. Okay, and that's how many feet? About 400 and something. So it's just really this parcel right here. 1 and 2. Parcels 1 and 2. They're about 5 acres together. 3, 4, 5, and 6 are not your clients. Pardon me? 3, 4, 5, and 6 are not your clients. No, that's a NICOR utility. Okay. Okay, great. Thank you. All right. I have one last question. Let's say that the agreement and the ordinance between the village of Bolingbrook and ComEd had been finalized, I don't know, 2010. Has it all been done? No action had been taken by the utility to get out? And then this action comes upon the forced annexation. Would you be making the same argument? If they had done it in 2010? If they had done it and then, you know, don't do anything with your client until, I think, when it started, all the fighting started in 2013 or something like that? Well, I can't take that out of context because it was done, and it's clear it was done by Bolingbrook. It was, you know, started by Bolingbrook for this purpose. So I just can't take that out of context in that fashion. All right. No further questions. We will be taking the matter under advisement, and I can't promise that you will get a decision quickly. Both sides did a very good job arguing a difficult, complicated case, and there's been some fine appellate advocacy going on here today. Thank you all. Thank you very much.